In the Matter of Ivan A. LEBAMOFF.

No. 02S00–9209–DI–719.

Supreme Court of Indiana.

March 14, 1994.

Robert L. Thompson, Fort Wayne, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Supreme Court Disciplinary Commission charged the Respondent, Ivan A. Lebamoff, with violating the *Rules of Professional Conduct for Attorneys at Law.* The charges emanated from Respondent's involvement in the financing of a wholesale beer distributorship.

Thereafter, the Commission and Respondent reached an agreement and tendered for this Court's approval a Statement of Circumstances and Conditional Agreement for Discipline pursuant to Ind. Admission and Discipline Rule 23, Section 11(d). Upon reviewing the same, we find that the Conditional Agreement should be approved.

Accordingly, we find that Respondent is a member of the Bar of this state, having been admitted on June 9, 1957.

In October of 1989, Beerco, Inc. ("Beerco"), a wholesale beer distributorship, filed Chapter 11 bankruptcy proceedings in the United States District Court, Northern District of Indiana, Fort Wayne Division. Respondent was a principal in and an attorney for Master Promotion Organization, Inc. ("Master"). Respondent's brother, George Lebamoff, had financial interests in retail alcoholic beverage licenses. Beerco entered into discussions with Master to arrange financing that would permit Beerco to continue operating under a Chapter 11 plan approved by the bankruptcy court.

Those arrangements were made with Summit Bank of Marion as a lender and Master, as an investor. Throughout the financing negotiations among Beerco, Master and Summit, it was consistently the position of Summit that George Lebamoff would be required to personally guarantee the financing extended from Summit to Beerco, and this was an expressly negotiated condition of the financing arrangement.

On December 30, 1989, Beerco, Master and Summit closed on the financing agreement. The documents associated with the loan closing reflected that Master and its shareholders were guarantors of the financing extended by Summit to Beerco. Specifically, Respondent, his brother, George Lebamoff, and

the others signed a guaranty agreement whereby they undertook to jointly and severally guarantee to Summit the repayment of the Beerco loan of up to $500,000. Also, on December 30, 1989, Summit and Beerco each executed a Deficiency Agreement wherein it was stated that George A. Lebamoff was a shareholder in Master.

Steven J. Ouellette ("Ouellette") was the attorney representing Beerco. On December 4, 1989, Ouellette, on behalf of the debtor, Beerco, and representatives of the lender, Summit Bank, and the investor, Master, filed an emergency motion with the bankruptcy court, seeking court approval of a proposed financing arrangement for Beerco. The motion incorporated as exhibits various documents which more specifically described the financial relationship among Beerco, Master and Summit. One of these exhibits was entitled "Deficiency Agreement". It specifically stated that the shareholders of Master, George A. Lebamoff, Ivan A. Lebamoff, Randall W. Replogle, and Joseph Doust, desire to invest in Beerco and shall enter into a Repurchase Agreement with Summit. Elsewhere, the emergency motion and incorporated exhibits stated that Master and its shareholders were to guarantee the financing extended to Beerco by Summit.

The sale and distribution of alcoholic beverages in Indiana is regulated by the Indiana Alcoholic Beverage Commission ("ABC"), and the Beerco–Master relationship came within the scope of the ABC's regulatory authority. Indiana law, IC 7.1–5–9–9 and 10, prohibits the holding of simultaneous interest in retail and wholesale alcoholic beverage licenses, and this is one of the issues examined by the ABC.

On April 30, 1990, the ABC held a hearing to inquire into the legality of the financial relationship between Beerco and Master, including an inquiry into the identities of the principals involved in the transaction. At said hearing, Respondent represented to the ABC that George Lebamoff was not a shareholder in Master and that George Lebamoff was not a guarantor of or involved in any financing that had been extended through the Beerco–Master transaction. This was a direct contradiction to statements in the parties' financing arrangements, and Respondent knew that his statements were not true. During the same ABC hearing, Steven Ouellette also stated that George Lebamoff was not and had never been a shareholder in Master. Respondent was present during this statement but did not offer any correction.

Later that year, on September 4, 1990, Respondent, Ouellette, and two attorneys for Summit filed a Stipulation to Modify Court Order and Financing Agreements ("Stipulation") in the Beerco Chapter 11 proceeding. Ouellette signed Respondent's signature to the Stipulation. The Stipulation stated that there was a "scrivener's error" in the Deficiency Agreement which had been attached as an exhibit to the parties' request for court approval of the financing arrangement. The Stipulation stated:

The error contained therein is a reference to George A. Lebamoff being a shareholder of Master Promotional Organization, Inc. George A. Lebamoff had not never (sic) and could not ever be a shareholder in Master Promotional Organization, Inc. based upon the rules and regulations of the Indiana Alcoholic Beverage Commission which do not allow a beer retailer to hold any type of interest in any manner in a beer wholesaler. The correct designation of the shareholder of Investor involved is Rosemary G. Lebamoff.

Ouellette had transmitted a draft copy of this Stipulation to Respondent back in March or April of 1990, around the time of the ABC hearing. Respondent did not object to the content even though he was aware that it was not true. On July 17, 1990, Ouellette transmitted to Respondent a final draft of the Stipulation together with a cover message seeking Respondent's review and approval. Again, Respondent did not object to the misstatement even though he was aware of it. Ouellette signed Respondent's name to the Stipulation, believing that he had Respondent's authority to do so. Respondent learned that the Stipulation had been filed but, once again, failed to attempt to correct the misstatement.

The Stipulation was incorrect because the designation of George Lebamoff as a share-

holder in Master and guarantor of the Summit Bank financing was not at all a scrivener's error, but an expressly negotiated condition of the financing arrangement with Summit, and Respondent was fully aware of this fact.

By way of mitigation, the parties agree that Respondent has had no other disciplinary actions in his long career. Moreover, they agree that he has devoted substantial time and effort to public service for the betterment of the Fort Wayne community.

The Respondent was charged with knowingly making a false statement of material fact to a tribunal, in violation of Prof.Cond.R. 3.3(a)(1); failing to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act against a tribunal by a client, in violation of Prof.Cond.R. 3.3(a)(2); committing a criminal act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, in violation of Prof.Cond.R. 8.4(b); engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation, in violation of Prof. Cond.R. 8.4(c); engaging in conduct that is prejudicial to the administration of justice, in violation of Prof.Cond.R. 8.4(d); and knowingly assisting another in violation of the *Rules of Professional Conduct*, thereby violating Prof.Cond.R. 8.4(a).

The parties could not come to an agreement as to which alleged violations are proved by the agreed statement of facts, although they agree on a suspension for four (4) months with automatic reinstatement.

 These are serious allegations of misconduct, containing criminal implications which could warrant a lengthy suspension and proof of rehabilitation in a subsequent reinstatement proceeding. The agreed facts demonstrate that Respondent participated, by acquiescence and by overt statements, in a scheme designed to circumvent ABC regulations and statutory prohibitions. We are mindful of the fact that the Commission evaluated Respondent's conduct, entered into the agreement without specific identification of any defined crime, and ultimately agreed to a relatively brief suspension. In light of these considerations, we conclude that Respondent violated Prof.Cond.R. 8.4(c) by engaging in conduct involving dishonesty, deceit and misrepresentation. He violated Prof.Cond.R. 3.3(a)(1) and (2) by knowingly making a false statement of material fact to the ABC and by failing to disclose a material fact to the bankruptcy court. He violated Prof.Cond.R. 8.4(a) by knowingly assisting another in violating the *Rules of Professional Conduct*. Respondent's entire course of conduct is prejudicial to the administration of justice and violates Prof.Cond.R. 8.4(d).

The intent of Admis.Disc.R. 23(11)(d), pursuant to which this agreement is being tendered, is to encourage appropriate, agreed disposition of disciplinary matters. That consideration, the Commission's experienced assessment of the circumstances of this case, and their agreement to the existence of mitigating factors, persuade us to approve the proposed sanction. *Matter of Larkin* (1993), Ind., 621 N.E.2d 1099. Had this matter been submitted without an agreement, the sanction imposed likely would have been more severe.

It is, therefore, ordered that the Conditional Agreement is hereby approved and that, accordingly, the Respondent, Ivan A. Lebamoff, is suspended from the Bar of this State for a period of four (4) months, beginning April 11, 1994, at the conclusion of which he will be reinstated automatically.

Costs of this proceeding are assessed against the Respondent.