In the Matter of Steven J. OUELLETTE.

No. 02S00–9206–DI–493.

Supreme Court of Indiana.

June 29, 1994.

John W. Whiteleather, Columbia City, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission charged the Respondent in a "Verified Complaint for Disciplinary Action" with violating the *Rules of Professional Conduct for Attorneys at Law.* Thereafter, the parties entered into and tendered for this Court's consideration a Statement of Circumstances and Conditional Agreement for Discipline. Also, the Respondent tendered the requisite affidavit pursuant to Admission and Discipline Rule 23, § 17(a).

The disciplinary charges against Respondent arise out of his involvement in the refinancing of a wholesale beer distributorship and its regulation by the Indiana Alcoholic Beverage Commission (ABC). Respondent is a member of the Bar of this state having been admitted on June 16, 1981. Respondent was the bankruptcy attorney for Beerco, Inc. (Beerco), a wholesale beer distributorship. In October of 1989, Beerco filed Chapter 11 bankruptcy proceedings in the United States District Court, Northern District of Indiana, Fort Wayne Division. Beerco also entered into discussions with Master Promotion Organizations, Inc. (MPO) to arrange financing through Summit Bank of Marion, Indiana, that would permit Beerco to continue operating under a Chapter 11 plan approved by the bankruptcy court.

While he did not negotiate the terms of the financing agreements, Respondent was aware of the status of the negotiations and the documentation associated therewith. On December 30, 1989, the transaction was completed, and Summit Bank extended new credit to Beerco. The line of credit was guaranteed by MPO and several individuals associated with MPO, one being George A. Lebamoff. Numerous documents were executed at closing identifying George A. Lebamoff as either a shareholder in MPO or as a

personal guarantor of the line of credit extended by Summit Bank to Beerco. These were:

a) A loan agreement, providing that MPO and its shareholders guarantee the line of credit. Respondent was aware of the terms of this agreement and personally notarized three of the signatures thereon.

b) A guaranty agreement, providing that MPO and certain individuals, among them George Lebamoff, jointly and severally guaranteed the line of credit. Respondent was aware of the terms of this guaranty agreement.

c) A deficiency agreement stating affirmatively that George Lebamoff was a shareholder in MPO. Respondent was aware of the terms of this agreement and personally notarized two of the signatures thereon.

d) A repurchase agreement, providing that MPO and other guarantors would purchase certain stock in Beerco upon the occurrence of certain specified contingencies. This agreement also identified George Lebamoff as guarantor of the line of credit. Again, Respondent was aware of the terms of this agreement and personally notarized some of the signatures, including the one of George Lebamoff.

e) A modification agreement, which also identified George Lebamoff as guarantor of the line of credit. Respondent was aware of the terms of this agreement.

At all times relevant hereto, George Lebamoff held a financial interest in certain retail alcoholic beverage licenses. The sale and distribution of alcoholic beverages in Indiana is regulated by the Indiana Alcoholic Beverage Commission (ABC), and the relationship between Beerco and MPO came within the scope of the ABC's regulatory authority. One issue of concern to the ABC is whether or not any person holding a financial interest in a retail alcoholic beverage license also has a financial interest in a wholesale license.

On April 30, 1990, the ABC held a hearing to inquire into the legality of the financial relationship between Beerco and MPO, including an inquiry into the identities of the principals involved in the Beerco/MPO transaction.

At said hearing, Respondent represented to the ABC that George Lebamoff was not, and had never been, a shareholder in MPO and that he was not a guarantor of or involved in any financing involving Beerco. These statements were false, and Respondent knew or should have known their falsity.

On September 4, 1990, Respondent, Ivan Lebamoff, as the attorney for MPO, and two bank attorneys filed a Stipulation to Modify Court Order and Financing Agreements in the Beerco Chapter 11 proceeding. Among other things, the pleading stated that the earlier representations made to the bankruptcy court had been incorrect in identifying George Lebamoff as a shareholder in MPO. The stipulation stated that George Lebamoff's designation as a MPO shareholder was a scrivener's error. This, of course, was false as George Lebamoff's participation was an expressly negotiated condition of the financing arrangement with Summit Bank and was not a scrivener's error. Respondent knew or should have known that such representations were false.

As part of their agreement, the Disciplinary Commission and Respondent also submitted the following mitigating factors: 1) Prior to the April 30, 1990, hearing before the ABC, Respondent was advised by representatives of MPO that George Lebamoff had been originally named, in error, as corporate secretary of MPO, and that such error had been corrected in the corporate record. Respondent was further advised that George Lebamoff was not a shareholder of MPO or a guarantor of the Beerco/MPO financing agreement. 2) Respondent signed the Stipulation to Modify the Court Order alleging a scrivener's error, based in part upon statements made by representatives of MPO that George Lebamoff was not and never had been a shareholder. 3) On April 2, 1991, Respondent filed another Stipulation in the bankruptcy court indicating that, as of De-

cember 9, 1989, information revealed that George Lebamoff was a principal and/or involved with MPO. This Stipulation also stated that a MPO shareholder meeting had been held on May 10, 1990, and all parties deemed objectionable by the ABC were removed as MPO shareholders or directors. The Stipulation did not state that the previous Stipulation of September 4, 1990, was erroneous, but Respondent believed that the past misrepresentations were thus corrected. 4) The parties also agree that Respondent has no prior disciplinary actions.

The foregoing findings clearly and convincingly establish Respondent's professional misconduct. The Respondent knowingly made false statements of material facts to a tribunal and failed to disclose such facts when disclosure was necessary, in violation of Prof.Cond.R. 3.3(a)(1) and (2). He engaged in conduct involving dishonesty, deceit and misrepresentation, in violation of Prof. Cond.R. 8.4(c), and he engaged in conduct prejudicial to the administration of justice, in violation of Prof.Cond.Rule 8.4(d).

The parties have agreed that the appropriate sanction for this misconduct is a suspension from the practice of law for two (2) months. We note that this case is a companion to the case of *Matter of Ivan A. Lebamoff* (1994), Ind., 630 N.E.2d 560. Here, as in the *Lebamoff* case, we are gravely concerned by the deceitful nature of the misconduct. Respondent was fully aware that the documents relating to the Beerco/MPO/Summit Bank financial arrangements specifically listed George Lebamoff as an important party to the transactions in his capacity as guarantor and shareholder in MPO. Indeed, Respondent notarized George Lebamoff's signature to some of the same documents. In the face of such concrete evidence, Respondent's reliance on the contradictory representations by MPO representatives seems incredible or, at best, naïve. On the other hand, we are mindful that the parties have agreed that mitigating factors exist which should temper the disciplinary sanction. We also note that the intent of Admis.Dis.R. 23, § 11(d), pursuant to which this agreement has been submitted, is to encourage appropriate, agreed disposition of disciplinary matters. The foregoing considerations, the Commission's experienced assessment of this case, and their concurrence with the proposed sanction persuade us that suspension for a period of two months is appropriate under the circumstances of this case. We, thus, conclude that the agreement tendered by the parties be approved.

Accordingly, it is ordered that Respondent, Steven J. Ouellette, is hereby suspended from the practice of law in this state for a period of two (2) months beginning July 28, 1994, with automatic reinstatement thereafter.

Costs of this proceeding are assessed against the Respondent.